IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ROBBIE LEE MOUZON,           )
                                   )
            Petitioner,       )
                                   )
      v.                        )        CV 119-130
                                   )       (Formerly CR 116-048)
UNITED STATES OF AMERICA,    )
                                   )
            Respondent.     )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner Robbie Lee Mouzon filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, as well as multiple motions to amend and supplement the original motion.  The Court **REPORTS** and **RECOMMENDS** the motions to amend and supplement be **DENIED**, (doc. nos. 19, 23, 26, 29), the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

      A.      **Pretrial Proceedings**

           1.      **Indictment and Penalty Certification**

In an indictment returned on July 6, 2016, a grand jury in the Southern District of Georgia charged Petitioner and one co-defendant in a seven count indictment as follows: Count One, conspiracy to commit robbery of a commercial business; Count Two, conspiracy to use and carry a firearm during crimes of violence as charged in Counts Three and Five; Count Three, robbery of a commercial business - Speedee Cash; Count Four, carrying, using

and brandishing a firearm during a crime of violence as charged in Count Three; Count Five, robbery of a commercial business - Jeweler's Bench; Count Six, carrying, using and brandishing a firearm during a crime of violence as charged in Count Five; and, Count Seven, possession of a firearm by a convicted felon.  United States v. Mouzon, CR 116-048, doc. no. 1 (S.D. Ga. July 6, 2016) (hereinafter "CR 116-048").

The Count One and Count Two conspiracy charges each carried a possible prison sentence of not more than twenty years.  Id., doc. no. 2.  The robbery charges in Counts Three and Five each carried a possible prison term of not more than twenty years.  Id. at 2.  Counts Four and Six, each charged under 18 U.S.C. § 924(c), carried a possible prison term for a first conviction of not less than five years if possessed or seven years if brandished, consecutive to any other sentence imposed.  Id.  Upon a second or subsequent conviction, the § 924(c) charges carried a possible term of imprisonment of not less than twenty-five years consecutive to any other sentence imposed.  Id.   The Count Seven felon in possession charge carried a possible term of imprisonment of not more than ten years.  Id.  The Court appointed attorney Kenneth D. Crowder to represent Petitioner.  Id., July 27, 2016 doc. entry.

### 2.    Pretrial Motions

Mr. Crowder filed pretrial motions, including a motion pursuant to Brady v. United States, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), for disclosure of exculpatory and impeachment material.  In particular, Mr. Crowder sought case and court files from Aiken, Lexington, Newberry, and Richland counties in South Carolina regarding dismissed charges filed against Petitioner, including from a trial in Lexington County in which Petitioner's federal co-defendant testified and Petitioner was acquitted.  Id., doc. no. 22.  The Court held a hearing on the Brady/Giglio motion and denied the motion on the basis the government was not obligated to provide files not in the possession of the prosecution team or

to provide public information which, with reasonable diligence, could be obtained by the defense on its own.  Id., doc. no. 34.

Chief United States District Judge J. Randal Hall then set the matter for a pretrial conference.  Id., doc. no. 35.  Upon learning Petitioner's co-defendant had reached an agreement to plead guilty, Mr. Crowder moved for a continuance, explaining the guilty plea materially altered the case, and although counsel had been conferring with Petitioner, inspecting the physical evidence, obtaining state court transcripts and researching and seeking witnesses, more time was needed to prepare.  Id., doc. no. 39.  Judge Hall granted the continuance, and shortly thereafter, Petitioner requested to "dismiss" Mr. Crowder and be appointed new counsel.  Id., doc. nos. 44, 45.  The undersigned held an *ex parte* hearing on Petitioner's motions, now made publicly available for these § 2255 proceedings.  Id., doc. no. 116 (*Ex Parte* Tr.); (doc. no. 11).

Petitioner confirmed he had no problems with Mr. Crowder on a personal level, but he was concerned about Mr. Crowder's prior work for the federal government and his law partner's friendship with the prosecutor.  *Ex Parte* Tr. 4-6.  He also disagreed with a defense strategy that included agreeing to factual stipulations for trial but not filing a motion to suppress concerning an "insufficient warrant" that was not signed.  Id. at 5, 7-8, 10, 21. Petitioner contended the warrant was insufficient under state law, and therefore Mr. Crowder should have challenged it under federal law.  Id. at 11.  Mr. Crowder explained he and Petitioner had multiple discussions about the warrant, and he had also discussed filing a motion to suppress with defense counsel for the co-defendant who was the driver of the vehicle, who would have likely had the best chance of challenging the search.  Id. at 13-14.  Although Petitioner disagreed with Mr. Crowder's legal analysis, counsel explained he believed filing the motion to suppress Petitioner requested would be frivolous and run the risk of incurring

3

sanctions from the Court.  Id. at 14.  The Court found no basis for substitution of counsel, recognizing there was no conflict of interest and there had been no breakdown in communication, and informed Petitioner he could (1) hire his own attorney, (2) continue with Mr. Crowder, or (3) represent himself.  CR 116-048, doc. no. 52.  Petitioner elected to continue with Mr. Crowder.  Id.

Petitioner's co-defendant entered his guilty plea on February 13, 2017, and Judge Hall set Petitioner's trial for April 24, 2017.  Id., doc. nos. 49-51, 53.

### B.     Trial

Mr. Crowder laid out the road map for the defense in his opening argument:  (1) no one could identify Petitioner as the masked robber; (2) the extensive amount of time that had passed between the 2012 robberies and the 2017 trial undermined the credibility of witness testimony and evidence; and (3) the testimony of Petitioner's co-defendant, Mr. Saylors, offered pursuant to a plea agreement that reduced his sentence, should be viewed with skepticism.  CR 116-048, doc. no. 117 ("Trial Tr."), pp. 89-94.  Indeed, the trial testimony confirmed the robberies of Speedee Cash and Jeweler's Bench both occurred, as charged in the indictment, on November 7, 2012, but no employee of either business could identify Petitioner as the masked man who pointed a gun and demanded money.  Id. at 96-98, 101, 108-11, 121-25, 149, 155, 163, 168, 172.  An employee of a neighboring business to Jeweler's Bench saw a man she could not identify jump into the passenger side of a waiting vehicle, and she identified the car - a white Chevrolet HHR - for law enforcement.  Id. at 177-80, 189.

Jason Vinson, at the time a sergeant in the Criminal Investigations Unit of the Richmond County Sheriff's Office ("RCSO"), testified at trial that he responded to the first robbery at Speedee Cash, and while there, heard a dispatch concerning the Jeweler's Bench

robbery and a description of the getaway car.  Id. at 204-09.  Sgt. Vinson drove to Bobby Jones

Expressway and, within two to three minutes, began following a white HHR on the expressway

approximately one mile from the second robbery.  Id. at 212-13.  As the car exited onto I-20,

Sgt. Vinson saw the front seat passenger, whom he identified as Petitioner, holding a "large

black firearm" and attempting to remove clothing.  Id. at 214-18, 228.

Sgt. Vinson activated his lights and sirens and followed the HHR, which was moving

erratically at speeds exceeding 100 mph while traveling into South Carolina.  Id. at 215-17.

Sgt. Vinson followed the HHR into a subdivision in Belvedere and saw Petitioner jump from

the moving car and attempt to limp off with nothing in his hands.  Id. at 216-20, 227-28.  Sgt.

Vinson followed the HHR, driven by Mr. Saylors, forced the car off the road and into a parking

lot, and arrested Mr. Saylors.  Id. at 216-20.  Sgt. Vinson waited for the crime scene unit to

arrive, then traveled a short distance to a location where an Aiken County investigator had

found Petitioner crouching behind a business.  Id. at 221, 225-26, 348-49.  Sgt. Vinson

identified Petitioner as the man he saw jumping out of Mr. Saylors' car, and during his trial

testimony, described a short conversation he and Petitioner had about the car chase.  Id. at 226-

27.  Sgt. Vinson then returned to the location of Mr. Saylors' car, which was later towed and

secured by Aiken County officers.  Id. at 228-29.

On cross-examination, Mr. Crowder challenged Sgt. Vinson's recollection of the car

chase and asked about any reports the officer may have reviewed to prepare for trial.  Id. at

232-33, 241.  Sgt. Vinson admitted the contemporaneous incident report he prepared was not

in the file and was no longer available; he had no explanation for the missing report.  Id. at

233-34, 237.  Rather, the reports Sgt. Vinson reviewed were a blending of the reports of several

officers who worked on the case and were not as detailed as the contemporaneous report he

prepared.   Id.   at 234-37.   Mr. Crowder's cross-examination challenged Sgt. Vinson's recollection of the events on the day of the robberies, given the passage of time and absence of his contemporaneous report.  Id. at 229-57.  For example, Mr. Crowder queried:

> Q:   And you're seeing all of this as you're driving 45-50 miles an hour on 520.
> A:   Yes, sir.
> Q:   With that much distance.
> A:   Yes, sir.
> Q:   Through tinted windows in rush hour four and a half years ago?  You recall with clarity the man is taking off the shirt and he's got a gun in his hand?
> A:   I do because that's how I knew I was behind the right car.

Id. at 243-44.

RCSO Deputy Brandon Beckman served as the chief investigator for the two robberies, and he executed a search warrant for the HHR in Aiken, South Carolina the day after the robberies.  Id. at 364-66, 387-88.  Inv. Beckman "gave [South Carolina officers] probable cause for the search warrant and it went to Aiken County" for a magistrate judge to issue the search warrant.  Id. at 389.  Although Inv. Beckman did not appear before the South Carolina magistrate judge who issued the warrant, he did see a copy of the search warrant signed by the judge.  Id. at 389; see also CR 116-048, doc. no. 177-1, p. 5 (copy of signed warrant).  Inv. Beckman searched the HHR at the Aiken County Detention Center and found jewelry from the Jeweler's Bench, camouflage gloves, and a handgun on the passenger seat.  Trial Tr. 366-67, 373-75, 378.  Inv. Beckman took the evidence recovered from the HHR, and although he never saw a return on the search warrant, he provided Aiken County officers a list of everything taken out of the HHR so they could handle the return on the warrant.  Id. at 386-87, 389-90; see also CR 116-048, doc. no. 177-1, p. 6 (copy of unsigned return).

6

Mr. Saylors, Petitioner's co-defendant, testified pursuant to his plea agreement with the government.  Trial Tr. 267-340.  Mr. Saylors testified he agreed to provide transportation for Petitioner to perform the robberies on November 7, 2012, and they decided on Speedee Cash as the first target based on a Google search performed during the drive from Columbia, South Carolina, to Augusta.  Id. 271-77.  Mr. Saylors stayed in the HHR while Petitioner robbed Speedee Cash and Jeweler's Bench.  Id. 278-80, 282-83.  Mr. Saylors described his high speed, erratic driving during the police chase from Augusta into South Carolina, as well as Petitioner's request to exit the car once it became obvious the vehicle had been damaged during the chase. Id. at 286-87.  Mr. Saylors stopped or slowed down to let Petitioner exit, and Petitioner threw the gun he had with him all day back through the window into the passenger seat.  Id. at 287, 312-13. On cross-examination, Mr. Crowder pressed Mr. Saylors on the details of his plea agreement and made clear Mr. Saylors' testimony against Petitioner was an effort to have his sentence reduced.  Id. at 291-94.  Mr. Crowder also pressed Mr. Saylors on the credibility of the details of his testimony concerning Petitioner's activities on November 7, 2012.  See, e.g., id. at 304, 307, 314-15.

At the end of the three-day trial that included twelve government witnesses and more than seventy exhibits, (id. at 1-3), the jury deliberated 101 minutes before finding Petitioner guilty of all seven counts of the indictment, (id. at 526, 528-30).

After the trial but before sentencing, Petitioner again moved to "dismiss" Mr. Crowder and have new counsel appointed for him.  CR 116-048, doc. nos. 84, 85.  Judge Hall denied the motions, explaining Petitioner failed to allege or provide a factual basis for his contention Mr. Crowder provided ineffective assistance.  Id., doc. no. 86.  Judge Hall relied not only on his own observations of Mr. Crowder's performance during the pretrial conference and jury

trial, but also upon a review of the hearing held the first time Petitioner moved to obtain new counsel, to conclude Mr. Crowder provided vigorous and able representation at trial and all other stages of the litigation such that there was no cause for appointing substitute counsel.  Id. Judge Hall also reminded Petitioner of the choices that had been previously explained to him regarding continuing with Mr. Crowder, representing himself, or hiring an attorney with his own funds.  Id.  Judge Hall also denied Petitioner's motion for reconsideration, (doc. nos. 87, 91), and Petitioner proceeded to sentencing with Mr. Crowder.

## C.      Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of twenty-five, a Criminal History Category of VI, and a Guidelines imprisonment range of 110 to 137 months for Counts One, Two, Three, Five, and Seven.  PSI ¶¶ 43, 68, 97.  As to Count Four, the Guidelines imprisonment range was dictated by statute, 18 U.S.C. § 924(c)(1)(A)(ii), as seven years for brandishing a firearm, consecutive to any other sentence imposed.  PSI ¶¶ 44, 95, 97.  As to Count Six, the Guidelines imprisonment range was also dictated by statute, 18 U.S.C. § 924(c)(1)(C)(i), as twenty-five years, consecutive to any other sentence imposed.  PSI ¶¶ 45, 95, 97.  The PSI also detailed an extensive history of felony convictions for multiple robberies and burglaries, which resulted in multiple terms of imprisonment exceeding one year in prison.  PSI  ¶¶ 52, 56, 58-65.

Petitioner objected to "Paragraphs 7-14 (The Offense Conduct), 17 (Acceptance of Responsibility), 18-45 (Offense Level Computation), and 95-109 (Sentencing Options)," as well as to "Paragraphs 95-97 (mandatory and consecutive punishment)."  PSI Add.  As Judge Hall summarized at sentencing, the objections "essentially, go to the issue of [Petitioner's] declaration of innocence."  CR 116-048, doc. no. 114 (Sent. Tr.), p. 3.  Judge Hall overruled

the objections and adopted the factual statements in the PSI as the Court's findings of fact and adopted the Guidelines calculations. Id. at 4-5.

Mr. Crowder argued vigorously against the harshness of the sentence, both in a presentencing memorandum, (CR 116-048, doc. no. 48), and at sentencing. He pointed out the mandatory consecutive sentences on Counts Four and Six, regardless of the sentence for convictions on Counts One, Two, Three, Five and Seven, exceeded the plea deal of 216 to 258 months the government had offered prior to trial and likely meant Petitioner would spend the rest of his life in prison. Id. at 1-3; Sent. Tr. 7-9. The government argued in favor of the Guidelines calculation, including the consecutive sentences for Counts Four and Six, pointing out the PSI recounted nineteen separate convictions, with thirteen relating to some form of burglary or theft. Sent. Tr. 10 -12.

After hearing from counsel, and noting Petitioner chose not to make a statement, Judge Hall imposed a total sentence of 500 months in prison, calculated as follows: 116 months each for Counts One, Two, Three, Five and Seven, to be served concurrently but consecutive to the required eighty-four month term on Count Four and consecutive to the 300-month term required on Count Six. Id. at 15-16; CR 116-048, doc. no. 102.

### D.    Direct Appeal

The Eleventh Circuit appointed Attorney Amy Lee Copeland to represent Petitioner on his direct appeal. CR 116-048, doc. nos. 120, 121. Ms. Copeland's brief, filed pursuant to Anders v. California, 386 U.S. 738 (1967), analyzed five issues: (1) sufficiency of the evidence to support the interstate nexus of a Hobbs Act conviction for robbing a local jewelry store; (2) whether Hobbs Act robberies qualify as "crimes of violence" under 18 U.S.C. § 924(c) to support the mandatory consecutive sentences imposed for Counts Four and Six; (3)

whether the district court should have appointed substitute counsel for Petitioner; (4) whether Petitioner was harmed by Mr. Crowder's failure to file a motion to suppress; and (5) whether the 500-month sentence was procedurally and substantively reasonable.  (Doc. no. 14-2, United States v. Mouzon, No. 17-14108-J (11th Cir. Apr. 16, 2018).)  As to the motion to substitute counsel, Ms. Copeland recognized there had been no conflict of interest identified and no breakdown in communication, but Petitioner disagreed with Mr. Crowder's legal assessment of the case.  (Id. at 24, 33-35.)  Specific to the motion to suppress, Ms. Copeland noted that separate from any issues with the warrant, the search may have been justified as an inventory search, and in any event, the evidence recovered from the search of the car "echoed" other evidence introduced against Petitioner at trial.  Id. at 25, 35-37.

Also dissatisfied with Ms. Copeland's legal assessment of the appeal, Petitioner wrote to the Eleventh Circuit complaining both Mr. Crowder and Ms. Copeland lied to him, providing a list of case citations he believed applied to his case, and asking Ms. Copeland's brief be "denied" and he be appointed new appellate counsel.  (Doc. no. 14-3.)  Petitioner subsequently filed a "Motion for Leave to File Supplemental Authority," in which he challenged his § 924(c) convictions under Johnson v. United States, 576 U.S. 591 (2015).  (Doc. no. 14-4.)  The Eleventh Circuit affirmed Petitioner's convictions and sentences:  "Our independent review of the entire record reveals that [Ms. Copeland's] assessment of the relative merit of the appeal is correct. . . .  [I]ndependent examination of the entire record reveals no arguable issues of merit."  (Doc. no. 14-5, United States v. Mouzon, No. 17-14108, slip op. at 2 (11th Cir. Aug. 29, 2018) (per curiam).)

### E.   § 2255 Motion

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his

sentence, raising the following claims:

(1)    Trial counsel provided ineffective assistance when he:

        (a)    failed to file a motion to suppress regarding the search of the getaway car based on a Georgia law enforcement officer conducting a search in Aiken, South Carolina, pursuant to a warrant obtained by a South Carolina officer (doc. no. 1, pp. 4, 15-16);

        (b)    failed to object to Sgt. Vinson's testimony based on an alleged Jenks Act violation because the original incident report and notes prepared by the officer were not provided, preventing effective cross-examination on allegedly perjured testimony (id. at 4, 16);

        (c)    failed to contact Petitioner's former South Carolina attorney to testify regarding a conversation with an unidentified ATF agent regarding the location of the firearm in the getaway car on the floorboard rather than in the passenger seat as presented at trial, (id. at 4, 17);

        (d)    failed to investigate Hakeem McCord as possible alternate suspect to Petitioner, (id. at 4, 17); and

        (e)    lied to Petitioner "during the entire criminal proceedings" by never contacting witnesses for Petitioner and lying in some unspecified way about the pretrial plea offer, (id. at 18).

(2)    The government's failure to provide, prior to trial, the deficient search warrant and return forming the basis for the ineffective assistance claim in Ground 1(a) violated its obligations under Brady v. United States, 373 U.S. 83 (1963), (doc. no. 1, p. 15).

(3)    Petitioner's convictions on Counts One, Two, and Seven should be remanded for resentencing based on the ruling of United States v. Davis, — U.S. —, 139 S. Ct. 2319 (U.S. June 24, 2019), that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague, (doc. no. 1, p. 5).

As relief, Petitioner requests his 500-month sentence be vacated and he be granted a new trial.

(Id. at 18.)

After the original § 2255 motion was briefed, Petitioner filed a notice in which he cites

an out-of-circuit case in support of Ground 3 and provided an updated citation for Davis, *supra*.

(Doc. no. 15.)  Then, in a motion signed March 21, 2020, and docketed on March 24, Petitioner filed a motion to amend his § 2255 motion to add three new claims:  (1) his convictions for Hobbs Act conspiracy and the substantive Hobbs Act offenses violate the Double Jeopardy Clause; (2) trial counsel was ineffective for not raising a Double Jeopardy challenge; and (3) he is entitled to relief from "stacking" his sentences for his § 924(c) convictions in Counts Four and Six under the First Step Act of 2018.  (See doc. no. 19 ("First Motion to Amend"); see also doc. no. 25.)  Respondent filed its opposition, arguing the claims are untimely, do not relate back to the original claims, are procedurally defaulted, and in any event, are without merit.  (Doc. no. 21.)  Petitioner subsequently filed a motion requesting that his First Motion to Amend be granted, but there was no additional legal argument.  (Doc. no. 23.)  Thus, the Court will consider both documents (doc. nos. 19, 23), as the First Motion to Amend.

Next, in a filing dated April 26, 2020, and docketed May 4, Petitioner filed another notice, in which he argues neither his convictions for conspiracy to commit Hobbs Act robbery nor his substantive convictions of Hobbs Act robbery can support his § 924(c) convictions in light of a recent Eleventh Circuit decision interpreting the Sentencing Guidelines. (See doc. no. 26 ("Second Motion to Amend"); see also doc. no. 28.)  Respondent did not object that Petitioner filed a notice rather than a motion to amend but did oppose Petitioner's new argument for relief.  (Doc. no. 27.)

Finally, in a filing dated June 19, 2020, and docketed June 29, Petitioner filed a "Letter and Motion for Leave" to add a claim challenging his felon in possession conviction on Count Seven under the Supreme Court's ruling in Rehaif v. United States, 139 S. Ct.  2191 (U.S. 2019).  (Doc. no. 29 ("Third Motion to Amend").  The government erroneously responded Petitioner had not requested permission to amend his original motion, but otherwise also

argued the Rehaif claim is untimely, does not relate back to the original claims, is procedurally defaulted, and in any event, is without merit.  (Doc. no. 32.)

## II.   DISCUSSION

### A.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way."  Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'"  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).  "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690.

"Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Id. at 1317. Rather, "Strickland permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course. LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014). That is, counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters

14

v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (citing Strickland, 466 U.S. at 692-93).

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such

"in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

### 1.   Petitioner Is Not Entitled to Relief on Ground 1(a)

In his first ineffective assistance claim, Petitioner asserts Mr. Crowder should have filed a motion to suppress evidence seized during the search of the getaway car, including Petitioner's firearm and fruits of the robberies.   Petitioner can show neither deficient performance nor prejudice.

Mr. Crowder's professional opinion concerning the merits of the motion to suppress has been hotly contested.   At the *ex parte* proceeding held when Petitioner first moved to "dismiss" him, Mr. Crowder stated he had identified several reasons a motion to suppress would fail and explained counsel for Mr. Saylors also chose not to challenge the search.   *Ex Parte* Tr. 11-14.   Appellate counsel, Ms. Copeland, did not raise the issue because the search could be justified as an inventory search, and the seized evidence "echoed" other evidence introduced at trial such as Mr. Saylors's damning testimony.   (Doc. no. 14-2, pp. 25, 35-37; Trial Tr. 278-80, 282-83, 287.)   The Eleventh Circuit conducted an independent examination of the record, agreed with Ms. Copeland assessment there were no arguable issues of merit, and affirmed Petitioner's convictions and sentence.   Mouzon, No. 17-14108, *slip op.* at 2.

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."   United States v. Frady, 456 U.S. 152, 164 (1982).   Consequently, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."

Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citation omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (same); White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) ("[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal.").

Petitioner already presented his suppression argument to the Eleventh Circuit, and it was rejected. He now attempts to relitigate the claim by cloaking it in an ineffective assistance claim. However, Petitioner fails to establish Mr. Crowder's decision not to pursue a suppression motion was a choice no competent counsel would have made. See Strickland, 466 U.S. at 690. Nor has he shown there was a reasonable probability the outcome of his trial would have been different such that he was prejudiced. See id. at 694. Indeed, as discussed above, there were multiple reasons the motion likely would have failed, and there was other strong evidence presented at trial linking the items found in the car to Petitioner. There can be no prejudice from failing to raise a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

Petitioner continues to argue alleged deficiencies with the warrant under state law, but any such state law violations neither render the search violative of the Fourth Amendment nor "affect the admissibility of evidence in federal court" so long the search would have passed muster if federal officers conducted the search. United States v. Ramsey, 376 F. App'x 968, 969 (11th Cir. 2010) (per curiam) (citing United States v. Gilbert, 942 F.2d 1537, 1541 (11th Cir. 1991) and Elkins v. United States, 364 U.S. 206, 223-24 (1960).) Petitioner has not shown the search of the impounded car violated the Fourth Amendment. Furthermore, as Respondent points out, Petitioner had not privacy interest in the car because he did not own or occupy the

car when it was seized and searched.  <u>See</u> <u>United States v. Dixon</u>, 901 F.3d 1332, 1339 (11th Cir. 2018) (rejecting passenger challenge to search of car because lack of Fourth Amendment privacy interest); <u>see also</u> <u>United States v. Ross</u>, 963 F.3d 1056, 1062 (11th Cir. 2020) (*en banc*) (explaining "Fourth Amendment rights are *not* infringed - or even implicated - by a search of a thing or place in which [an individual] has no reasonable expectation of privacy").  To the extent Petitioner claims there was no signed warrant, the record conclusively disproves that assertion.  (Doc. no. 14-1 (signed search warrant).)

For all of these reasons, Mr. Crowder's decision to forego the motion to suppress was neither deficient nor prejudicial, and Petitioner is not entitled to relief.

### 2.    Petitioner Is Not Entitled to Relief on Ground 1(b)

Petitioner asserts Mr. Crowder should have raised a Jencks Act objection to Sgt. Vinson's testimony because the missing incident report and notes precluded effective cross-examination of allegedly perjured testimony.  Petitioner can show neither deficient performance nor prejudice.

Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  <u>United States v. Brandon</u>, 636 F. App'x 542, 546 (11th Cir. 2016) (*per curiam*).  "A statement is 'in the possession of the United States' for Jencks Act purposes if it is in the possession of a federal prosecutorial agency."  <u>United States v. Naranjo</u>, 634 F.3d 1198, 1211-12 (11th Cir. 2011) (citation omitted).  Moreover, "a party cannot produce what it doesn't have."  <u>United States v. Sams</u>, Case No. 4:19-cr-15, 2019

WL 3023746, at *2 (S.D. Ga. July 10, 2019) (citing <u>United States v. Cannington</u>, 729 F.2d 702, 712 (11th Cir. 1984)).

The trial transcript shows Mr. Crowder challenged Sgt. Vinson's recollection of the events on November 7, 2012, and vigorously questioned him about his missing contemporaneous incident report.  Trial Tr.  232-34, 237, 241.  Indisputably, no one had the missing report, and the government produced all available reports.  Faced with a situation where he could not force the government to produce what it did not have, Mr. Crowder followed the reasonable strategy of casting doubt on the credibility of Sgt. Vinson's recollection of events.  <u>See, e.g.</u>, <u>id.</u> at 229-57.  Because Sgt. Vinson's contemporaneous report no longer existed at the time of trial, there was no Jenks Act violation, and therefore no prejudice as a result of Mr. Crowder not raising such an objection.  Petitioner fails to satisfy either prong of <u>Strickland</u> on this claim, and he is not entitled to relief.

### 3.   Petitioner Is Not Entitled to Relief on Ground 1(c)

Petitioner asserts Mr. Crowder should have contacted his former South Carolina attorney, Ola Johnson, to testify regarding a conversation with ATF in 2015 about the firearm Petitioner was convicted of using during the two robberies.  Petitioner maintains the firearm was on the floorboard of the car between the driver and passenger seats, not on the passenger seat as the evidence showed at trial.  (Doc. no. 1, p. 17.)  Petitioner can show neither deficient performance nor prejudice.

As the Eleventh Circuit has explained, "[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."  <u>Evans v. Sec'y, Fla. Dep't of Corr.</u>, 699 F.3d 1249, 1268 (11th Cir. 2012) (citing <u>Waters</u>, 46 F.3d at 1512); <u>Campbell v. United States</u>, 743 F. App'x 412, 418 (11th Cir.

19

2018) (*per curiam*).  Ineffective assistance of counsel cannot be based on "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified."  <u>Foster</u>, 823 F.2d at 406; <u>see also</u> <u>United States v. Long</u>, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses.").  Not only is Petitioner's claim about potential testimony from Mr. Johnson devoid of any details that would have made a difference to the outcome of the trial, but the record reflects Mr. Crowder pursued a different, not unreasonable, strategy to challenge the gun-related evidence.

Rather than call Mr. Johnson to testify about a 2015 conversation with ATF, testimony that may have been subject to hearsay and relevance objections, Mr. Crowder questioned Sgt. Vinson, Inv. Beckham, and Mr. Saylors about where the firearm was located in Mr. Saylors' car, how it got there, and why no fingerprints were taken.  Trial Tr. 252-53, 318-20, 394-95, 398-400.  As promised in his opening argument, (Trial Tr. 89-94), and reiterated in his closing argument, (<u>id.</u> at 478-87), Mr. Crowder focused on faulty memories, credibility, and inconsistencies in the trial testimony to cast doubt on the evidence, and in particular to paint Mr. Saylors as a liar.

To show an attorney's choice of strategy is unreasonable, a petitioner must show no competent counsel would have made such a choice.  <u>Strickland</u>, 466 U.S. at 690, 691; <u>Puiatti</u>, 732 F.3d at 1279-80; <u>Waters</u>, 46 F.3d at 1512; <u>Devier</u>, 3 F.3d at 1450.  Petitioner fails to do so.  Indeed, he fails to show Mr. Johnson's testimony would have changed the outcome of trial, particularly in light of all the other evidence adduced at trial.  His conclusory assertion the testimony "could have challenged Richmond County and ATF Agent Ronald Rhodes" is insufficient.  <u>See</u> <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory

allegations of ineffective assistance are insufficient." (citation omitted); <u>Pio v. United States</u>, No. 13-23666-CIV, 2014 WL 4384314, at *3 (S.D. Fla. Sept. 3, 2014) (same) (citing cases). Petitioner fails to satisfy either prong of <u>Strickland</u> on this claim, and he is not entitled to relief.

### 4.    Petitioner Is Not Entitled to Relief on Ground 1(d)

Petitioner asserts Mr. Crowder "never pursued suspect Hakeem McCord," a resident of Augusta, Georgia who "fit the description of the perp" more than Petitioner did. (Doc. no. 1, p. 17.) Petitioner provides no further details of this claim other than to say Mr. McCord was a topic of the <u>Brady</u> motion. (<u>Id.</u>) Petitioner can show neither deficient performance nor prejudice.

First, Petitioner has not demonstrated Mr. Crowder's strategy regarding McCord was objectively unreasonable based on the information available to him. Indeed, Petitioner provides no details about what he may have told Mr. Crowder about Mr. McCord.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

<u>Strickland</u>, 466 U.S. at 691. Plaintiff does not explain why Mr. McCord may have been a viable suspect such that Mr. Crowder's decision not to pursue this defense fell below an objective standard of reasonableness. Nor is it apparent from the petition this defense had the potential to make a difference to the outcome of the trial, particularly in light of the other trial testimony and evidence linking Petitioner to the robberies.

Second, to the extent Petitioner asserts Mr. McCord was part of his <u>Brady</u> motion that Mr. Crowder never pursued, the record reflects the Court denied that motion after holding a hearing. CR 116-048, doc. nos. 32-34. Thus, the record belies any assertion Mr. Crowder did

not pursue a <u>Brady</u> motion.  Moreover, as discussed above, Petitioner provides no details or explanation why Mr. McCord may have been a viable suspect.  Indeed, he claims Mr. McCord fit a description of a suspect that Petitioner does not provide, and Petitioner fails to provide a description of Mr. McCord such that any comparison is possible.

Petitioner fails to show pointing to Mr. McCord as an alternate suspect would have changed the outcome of trial, particularly in light of the other evidence adduced at trial. Conclusory assertions will not suffice.  <u>See Wilson</u>, 962 F.2d at 998; <u>Pio</u>, 2014 WL 4384314, at *3.  Petitioner fails to satisfy either prong of <u>Strickland</u> on this claim, and he is not entitled to relief.

### 5.    Petitioner Is Not Entitled to Relief on Ground 1(e)

Petitioner asserts Mr. Crowder lied to Petitioner "during the entire criminal proceedings" by never contacting witnesses for Petitioner and lying in some unspecified way about the pretrial plea offer.  (Doc. no. 1, p. 18.)  Petitioner provides no further details of this claim other than to say "the constant lies was the purpose of the *ex parte* hearing on January 26, 2017."  (<u>Id</u>.)  Petitioner can show neither deficient performance nor prejudice.

Conclusory assertions of ineffective assistance will not suffice.  <u>See Wilson</u>, 962 F.2d at 998; <u>Pio</u>, 2014 WL 4384314, at *3; <u>see also</u> <u>Oliver v. Wainwright</u>, 795 F.2d 1524, 1531 (11th Cir. 1986) (*per curiam*) (claiming counsel "failed to investigate facts merely states the general principles of law on the subject without making specific reference to any deficiency" fails to state any constitutional claim).  Petitioner provides no details about the alleged lies told by Mr. Crowder.  Moreover, the transcript of the *ex parte* hearing belies the assertion those proceedings were held to address the supposed lies.  <u>See *Ex Parte*</u> Tr.  To the contrary,

Petitioner confirmed at that hearing he had no problems with Mr. Crowder on a personal level, but did have questions about his professional associations and trial strategy. Id. at 4-6.

Petitioner described Mr. Crowder as "a very, very competent attorney" who was pursuing a legal strategy with which Petitioner disagreed. Id. at 6-7. The bulk of the hearing focused on Mr. Crowder's refusal to file what he viewed as a frivolous motion to suppress and Petitioner's legal knowledge, or lack thereof. See generally Ex Parte Tr. Petitioner mentioned a lie being told in the context of a jail conversation he overheard concerning the prosecutor, but Petitioner confirmed Mr. Crowder had no involvement. Id. at 5-6. The only mention of a plea agreement was Petitioner's acknowledgment he turned down a plea agreement with a potential twenty-five year sentence. Id. at 22-23. In the end, the Court determined there was no conflict of interest and no breakdown of communication justifying appointment of new counsel. CR 116-048, doc. no. 52. Petitioner agreed he could get past the issues which caused him to request new counsel and wanted to proceed with Mr. Crowder as counsel. Ex Parte Tr. 33-34.

Wholly insufficient are Petitioner's belated, conclusory, and self-serving allegations of lies and failures to contact unspecified witnesses. Petitioner is not entitled to relief on this claim.

### B. Petitioner Procedurally Defaulted Grounds Two and Three, and In Any Event, They Have No Merit

#### 1. Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255

challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013).

### 2.   Grounds Two and Three Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal

Ms. Copeland's Anders brief analyzed five issues:  (1) sufficiency of the evidence to support the interstate nexus of a Hobbs Act conviction for robbing a local jewelry store; (2) whether Hobbs Act robberies qualify as "crimes of violence" under 18 U.S.C.  §  924(c) to support the mandatory consecutive sentences imposed for Counts Four and Six; (3) whether the district court should have appointed substitute counsel for Petitioner; (4) whether Petitioner was harmed by Mr. Crowder's failure to file a motion to suppress; and (5) whether the 500-month sentence was procedurally and substantively reasonable.  (Doc. no. 14-2, United States v. Mouzon, No. 17-14108-J).  Dissatisfied with Ms. Copeland's assessment of the appeal, Petitioner sent the Eleventh Circuit "supplemental authority" providing a list of case citations and attempting to challenge his § 924(c) convictions under Johnson v. United States, 576 U.S. 591 (2015).  (Doc. nos. 14-3, 14-4.)

Because they were not raised on direct appeal, Ground Two, alleging a Brady violation, and Ground Three, alleging 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague in light of United States v. Davis, 139 S. Ct. 2319 (U.S. 2019), are barred from review in these collateral

proceedings.  To avoid the bar to these claims, Petitioner must satisfy the cause and actual prejudice standard set forth above, or he must establish actual innocence.  He makes no argument as to any exception.

As to the Brady claim, Petitioner contends a copy of the allegedly improper search warrant was not provided until after trial.  However, Petitioner referenced an insufficient and unsigned warrant at the *ex parte* hearing well in advance of trial.  *Ex Parte* Tr. 7, 21.  Petitioner points to no reason why he could not have raised his Brady claim on direct appeal.  Moreover, as discussed in detail below, there is no merit to the Brady claim, and therefore Petitioner can show no prejudice.  Finally, this claim is not based on new, reliable evidence that would satisfy the actual innocence exception because the warrant existed at the time of trial.  Accordingly, the Brady claim is procedurally defaulted.

Similarly, as to the current § 924(c) claim in Ground Three, Petitioner did not raise it on direct appeal, but he could have.  While the Supreme Court issued its Davis decision in 2019, the mere fact a claim was previously unacceptable to a court does not satisfy the cause requirement.  Bousely, 523 U.S. at 623; Lynn, 365 F.3d at 1235.  Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." Prost v. Anderson, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.).  Indeed, successfully challenging circuit precedent all the way to the Supreme Court is, in fact, the reward to litigants who "took the trouble to challenge adverse circuit precedent." Id. at 590-91.  Moreover, as discussed in detail below, there is no merit to the Davis claim, and therefore Petitioner can show no prejudice.  Finally, this claim is not based on new, reliable evidence that would satisfy the

actual innocence exception because the argument is based on legal theory, not evidentiary facts.  Accordingly, the <u>Davis</u> claim is procedurally defaulted.

### 3.   Even If Grounds Two and Three Were Not Procedurally Defaulted, There Is No Merit to Either Claim

#### (a)   There Was No <u>Brady</u> Violation

Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). To establish a <u>Brady</u> violation, Petitioner must show:  "(1) the prosecution suppressed evidence; (2) the evidence was favorable to [the defendant]; and (3) the evidence was material to the establishment of guilt or innocence."  <u>United States v. Jeri</u>, 869 F.3d 1247, 1260 (11th Cir. 2017) (citation omitted).  To establish prejudice from the withholding of favorable evidence, a petitioner must show materiality of the undisclosed evidence in the sense the result of the proceeding would have been different.  <u>Turner v. United States</u>, 582 U.S. -, 137 S. Ct. 1885, 1893 (2017).

Petitioner has not established a valid <u>Brady</u> claim.  Indeed, as discussed above, a copy of the signed warrant was produced in discovery, and Petitioner discussed it at the *ex parte* hearing.  *Ex Parte* Tr. 7, 21; <u>see also</u> (doc. no. 14-1 (signed search warrant).)  Pretermitting any argument based on the absence of a signed copy of the return on the warrant, (Trial Tr. 389; doc. no. 14-1, p. 6), an unsigned return is not of constitutional significance.  <u>See</u> <u>Cady v. Dombrowski</u>, 413 U.S. 433, 449 (1973).  Moreover, Petitioner cannot show materiality because (1) there was an alternative reason for searching the car even without a warrant, *i.e.*, inventory search upon impound after Mr. Saylors' arrest), and (2) evidence other than

that discovered in the car was produced at trial which connected Petitioner to the robberies and firearm.

### (b)   _Davis_ Has No Impact on Petitioner's Convictions on Counts One, Two, and Seven

Petitioner claims he should be resentenced on his two conspiracy and felon in possession convictions in light of United States v. Davis, 139 S. Ct. 2319 (2019).  Section 924(c) requires imposition of a mandatory sentence for an individual convicted of using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." Sections 924(c)(3)(A) and (B) define "crime of violence" as an offense that is a felony and:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection A is commonly referred to as the "elements clause" and subsection B is known as the "residual clause."  In re Pollard, 931 F.3d 1318, 1329 (11th Cir. 2019) (_per curiam_).

In Davis, the Supreme Court  "extended its holdings in Johnson v. United States, [576 U.S. 591], 135 S. Ct. 2551, 192 L.Ed.2d 569 (2015), and Sessions v. Dimaya, — U.S. —, 138 S. Ct. 1204, 200 L.Ed.2d 549 (2018), to § 924(c) and held that § 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague."  In re Navarro, 931 F.3d 1298, 1301 (11th Cir. 2019) (_per curiam_) (citing Davis, 139 S. Ct. at 2324-25, 2336).  However, Davis left undisturbed the elements clause.  139 S. Ct. at 2323-36.  Therefore, if the predicate felony for a § 924(c) conviction qualifies as a crime of violence under the elements clause, that conviction is valid even after Davis.

Count One charged conspiracy to commit robbery of a commercial business in violation of 18 U.S.C. § 1951(a), and Count Seven charged possession of a firearm by a convicted felon, in violation of 18 U.S.C. § § 922(g)(1) and 924(a)(2).  CR 116-048, doc. no. 1.  Neither one of these Counts charged a § 924(c) violation, and <u>Davis</u> therefore does not apply.  Count Two charged Petitioner with conspiracy to commit an offense under § 924(c), but the predicate felonies were specifically delineated as the substantive Hobbs Act robberies charged in Counts Three and Five.  <u>Id.</u> at 3.  In the Eleventh Circuit, Hobbs Act robbery "categorically qualifies as a crime of violence under § 924(c)'s elements clause."  <u>United States v. White</u>, 806 F. App'x 936, 937 (11th Cir. 2020) (*per curiam*) (citations omitted); <u>United States v. Duhart</u>, 803 F. App'x 267, 271 (11th Cir. 2020).

Petitioner argues conspiracy to commit Hobbs Act robbery, as charged in Count One, does not qualify as a crime of violence that would support a conspiracy to commit a § 924(c) offense as charged in Count Two.  (Doc. no. 1, p. 5.)  That general principle is true.  <u>See</u> <u>Brown v. United States</u>, 942 F.3d 1069, 1076 (11th Cir. 2019) (*per curiam*).  However, because the predicate offenses for the § 924(c) conspiracy charged in Count Two are specifically listed as the substantive Hobbs Act robberies in Counts Three and Five, <u>Davis</u> affords Petitioner no relief on Count Two.  <u>See</u> <u>Duhart</u>, 803 F. App'x at 271 (recognizing courts may "refer to a defendant's indictment, plea agreement, plea colloquy, and attendant factual proffer" when determining which predicate offenses underlie § 924(c) conviction).

### C.     The Motions to Amend Should Be Denied

Since the original § 2255 motion was briefed, Petitioner has filed numerous "notices" and motions to amend.  The first three amended claims are raised in the First Motion to Amend, dated March 21, 2020.  (Doc. nos. 19, 23.)  The fourth amended claim is raised in the Second

Motion to Amend, dated April 26, 2020.  (Doc. no. 26.)  The last amended claim is raised in the Third Motion to Amend, dated June 19, 2020.  (Doc. no. 29.)  Respondent opposes all motions to amend, arguing the claims are variously untimely, do not relate back to the original claims, are procedurally defaulted, and are without merit.  (Doc. nos. 21, 27, 32.)  The five claims are as follows:

(1)   Petitioner's convictions for Hobbs Act conspiracy and the substantive Hobbs Act offense violate the Double Jeopardy Clause.

(2)   Mr. Crowder provided ineffective assistance by not raising a Double Jeopardy challenge.

(3)   Petitioner is entitled to relief from "stacking" his sentences for his § 924(c) convictions in Counts Four and Six under the First Step Act of 2018.

(4)   Petitioner's convictions for Hobbs Act conspiracy and the substantive Hobbs Act are no longer valid in light of United States v. Eason, 953 F.3d 1184 (11th Cir. 2020).

(5)   Petitioner's felon in possession conviction is no longer valid in light of Rehaif v. United States, 139 S. Ct.  2191 (U.S. 2019).

### 1.      Standard for Amending

The Federal Rules of Civil Procedure apply to proceedings for habeas corpus "to the extent that the practice in those proceedings:  (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."  Fed. R. Civ. P. 81(a)(4).  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions.  See Mayle v. Felix, 545 U.S. 644, 654 (2005) (citing 28 U.S.C. § 2242);

Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001).  Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Under Rule 15(a)(1)(A), a party may amend his pleading once as a matter of course within twenty-one days after service.  None of Petitioner's motions to amend - all filed after the original motion had been fully briefed – fall under the rubric of Rule 15(a)(1)(A).  Thus, he can only amend with leave of court:  "[A] party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Respondent does not consent, and thus the Court turns to its determination on whether Petitioner's amendments should be allowed.

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely.  Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878 (11th Cir. 2013) (per curiam).  That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it."  Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008).  "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment."  Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (per curiam) (quoting Foman, 371 U.S. at 182).

As one court has explained in the context of affirming the denial of a request to amend in a § 2255 case, a petitioner who "has had ample opportunity to present his case to the Court . . . cannot simply raise new claims as they occur to him."  United States v. Burbage, 280 F. App'x 777, 782 (10th Cir. 2008); cf. McCleskey v. Zant, 499 U.S. 467, 485 (1991) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal

litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." (citation omitted)).  This is particularly true where a party has been put on notice that his claims are meritless and then attempts to introduce new theories of obtaining relief.  See Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1236-37 (11th Cir. 2005).  Moreover, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).  Because the proposed new claims are untimely and/or cannot form the basis for relief, the motions to amend should be denied.

### 2.     Four of Petitioner's New Claims Are Untimely

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1.    the date on which the judgment of conviction becomes final;

2.    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentences on August 29, 2018.  (Doc. no. 14-5, <u>Mouzon</u>, No. 17-14108).  Although he did not pursue his direct appeal any further, Petitioner had ninety days to file a petition for writ of certiorari with the United States Supreme Court, (Sup. Ct. R. 13.1), meaning that absent one of the exceptions in § 2255(f)(2)-(4), he had one year from the end of November 2018 to file his amendments. <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003) (determining finality attaches to conviction when time for filing certiorari petition expires).  Thus, the First and Second Motions to Amend, dated March 21 and April 26, 2020, respectively, are untimely.

Petitioner has no argument that any of the other three possible statutory trigger dates apply to the first two motions.  As discussed in Part II(C)(4)(b), although the First Step Act of 2018 was passed after Petitioner's convictions became final, it does not apply to Petitioner. Petitioner argues his Third Motion to Amend, raising a claim under <u>Rehaif</u>, was timely filed within one year of the Supreme Court's decision in 2019.  Because the timeliness calculation on that claim comes down to a matter of days and the record does not contain the necessary information about the prison mail system, the Court declines to find the Third Motion to Amend is time-barred.  However, as discussed below, that motion should be denied on futility grounds.

An otherwise untimely request for relief under § 2255 may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred.  Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (quoting <u>Pace v. DiGuglielmo</u>,

544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).

Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298,

1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson

v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of

proving his entitlement to equitable tolling and will not prevail based upon a showing of either

extraordinary circumstances or diligence alone; the petitioner must establish both.  See Damren

v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely request for § 2255 relief may also be

appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby

"a constitutional violation has probably resulted in the conviction of one who is actually

innocent."  McQuiggin, 569 U.S. at 392 (citing Murray v. Carrier, 477 U.S. 478, 495-96

(1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  As

explained above in Part II(B)(1), the actual innocence exception is exceedingly narrow in

scope and must encompass factual innocence, not legal insufficiency.  McQuiggin, 569 U.S.

at 394-85; Bousely, 523 U.S. at 623-24.

Here, Petitioner has not argued, let alone shown, diligence in pursuing his proposed

new claims one through four, extraordinary circumstances prevented him from timely filing

these new claims, or a miscarriage of justice will occur if the Court does not consider them.

Nor has Petitioner presented any evidence, much less new evidence, to suggest that he no

reasonable juror would have convicted him.

As the proposed amendments one through four are untimely, the Court turns to whether

the proposed amendments could be considered timely by relation back to the date of filing the

original § 2255 motion.

### 3.     The New Claims One through Four Do Not Relate Back to the Original § 2255 Motion

Under Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out -- in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (citing Pruitt, 274 F.3d at 1318). Thus, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." Id. at 1215 (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)). As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. This may be the case even if one or both claims do not explicitly state supporting facts. When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002) (*per curiam*). In other words, at issue here is whether the proposed amended claims one through four are merely attempts to expand upon the original claims, or if the amended claims rely upon different facts.

Petitioner's proposed new claims one through four are materially different from the ineffective assistance, Brady, and Davis claims discussed in detail above. Petitioner never gave any indication of a substantive Double Jeopardy claim or ineffective assistance claim based thereon. For the sake of completeness, the Court also notes Petitioner's substantive Double Jeopardy claim is procedurally defaulted for the reasons stated in Part II(B)(1) & (2) because it was available, but not raised, on direct appeal. Nor did he raise any sentencing

issues relating to his current proposed First Step Act claim.  Petitioner's challenge to his Hobbs

Act conspiracy count was based on an interpretation of the § 924(c) statute in Davis.  The new

claim four attempts to rely, in contrast, on an interpretation of the *Sentencing Guidelines* and

United States v. Eason, 953 F.3d 1184 (11th Cir. 2020), to challenge both his conspiracy and

susbstantive Hobbs Act convictions.

The facts underlying Petitioner's original § 2255 motion and his new claims one to four

are materially different and do not relate back to the original § 2255 motion.  Therefore, these

four new claims should not be amended into the case because they are untimely.  See Oliveiri

v. United States, 717 F. App'x 966, 967-98 (11th Cir. 2018) (*per curiam*) (recognizing futility

of amendment where new claim, although arising from same proceedings as claims in original

§ 2255 motion, was not tied to same core of operative facts); Williams v. United States, Nos.

3:17-cv-473-J-34PDB, 3:15-cr-54-J-34PDB, 2020 WL 2097979, at *9-10 (M.D. Fla. May 1,

2020) (denying motion to amend where new claim did not arise from same core facts as timely

§ 2255 claims).

### 4.    Even If the Amended Claims One through Four Were Timely, They, Along with the Rehaif Claim, Are Without Merit

### (a)    New Claims One and Two:  Double Jeopardy

Petitioner was convicted of a Hobbs Act conspiracy charge, Count One, and two

substantive Hobbs Act charges, Counts Three and Five.  It is long-settled that conspiracy and

substantive offense are separate offenses because they have separate elements of proof.  See

United States v. Felix, 503 U.S. 378, 389 (1992) ("[N]ot questioned . . . is the rule that a

substantive crime and a conspiracy to commit that crime are not the 'same offence' for double

jeopardy purposes."); Garrett v. United States, 471 U.S. 773, 778 (1985) ("[C]onspiracy is a

distinct offense from the completed object of the conspiracy."); Pinkerton v. United States,

328 U.S. 640, 643 (1946) (same);  see also United States v. Corley, 824 F.2d 931, 936 (11th Cir. 1987) ("Of course, conspiracy and the related substantive offense which is the object of the conspiracy are considered separate and distinct crimes.").

This general principle has been applied specifically to conspiracy and substantive Hobbs Act convictions.  See United States v. Diaz, 248 F.3d 1065, 1083-84 & n.23 (11th Cir. 2001) (recognizing substantive Hobbs Act charges cover same episodes as conspiracy charge but also that "[u]nlike conspiracy charged under the Hobbs Act, which only requires proof that defendants' scheme *would have* affected interstate commerce, a substantive Hobbs Act violation requires an actual effect on interstate commerce"); United States v. Kaplan, 171 F.3d 1351, 1352 (11th Cir. 1999) (affirming convictions for attempted extortion and conspiracy to commit extortion under Hobbs Act).

As there is no valid Double Jeopardy challenge to Petitioner's convictions for conspiracy to violate the Hobbs Act and the substantive Hobbs Act robberies, there can be no ineffective assistance for failing to raise a meritless claim.  See Nyhuis, 211 F.3d at 1344; Winfield, 960 F.2d at 974.  Thus, even if the new claims one and two were not untimely, they should not be allowed as amendments because there is no merit to the claims.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.

### (b)   New Claim Three:  No "Stacking" Sentences under First Step Act

In new claim three, Petitioner argues the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, does not allow for "stacked" sentences of eighty-four months and 300 months on his § 924(c) convictions for Counts Four and Six.  The First Step Act amended § 924(c) to reduce the severity of stacking multiple convictions by applying the mandatory twenty-five-year sentence for each additional § 924(c) conviction only to a repeat offender

who violated § 924(c) after a prior conviction under the statute became final.  First Step Act, § 403.  Previously, as in Petitioner's case, the mandatory twenty-five-year sentence was triggered on the second or subsequent count of conviction, regardless of whether the convictions resulted from the same indictment.  See Deal v. United States, 508 U.S. 129, 132 (1993).

While Petitioner correctly identifies the change in the law, his First Act claim is without merit because the law provides the change applies "to any offense that was committed before the date of enactment . . . if a sentence for the offense has not been imposed as of such date of enactment."  Pub. L. No. 115-391, § 403(b).  Judge Hall imposed Petitioner's sentence in September 2017, (CR 116-048, doc. no. 102), more than one-year before passage of the First Step Act in December 2018.  Therefore, the First Act does not apply to Petitioner's sentence. See United States v. Buckner, 808 F. App'x 755, 763 n.12 (11th Cir. 2020) (*per curiam*) (rejecting First Step Act claim for resentencing on stacked § 924(c) sentences imposed in 2016 because Congress expressly excluded sentences already imposed prior to the date of statute's enactment in 2018).  Thus, even if the new claim three were not untimely, it should not be allowed as an amendment because there is no merit to the claim.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.

> (c)   **New Claim Four:  Neither the Conviction for Conspiracy to Commit Hobbs Act Robbery, Nor the Convictions for the Substantive Hobbs Act Robbery, Qualify as Crimes of Violence to Serve as a Predicate Offense for Petitioner's § 924(c) Convictions**

In new claim four, Petitioner argues the Eleventh Circuit's opinion in United States v. Eason, 953 F.3d 1184 (11th Cir. 2020), explaining that Hobbs Act robbery is not a crime of violence for purposes of U.S.S.G. § 4B1.2(a), means that Hobbs Act robbery cannot support a

conviction under § 924(c).  In <u>Eason</u>, the Eleventh Circuit ruled Hobbs Act robbery does not support a sentencing enhancement for a defendant who qualifies as a "career offender" under § 4B1.1(a) because Hobbs Act robbery does not qualify as a "crime of violence" as defined in U.S.S.G. § 4B1.2(a).  953 F.3d at 1194-95.  Thus, Petitioner contends if Hobbs Act robbery does not qualify as a "crime of violence" under the Sentencing Guidelines, it cannot qualify as a "crime of violence" under § 924(c).  Petitioner's argument fails.

First, in his original § 2255 motion, Petitioner challenged his two conspiracy convictions, Counts One and Two, and his felon in possession conviction, Count Seven.  (Doc. no. 1, p. 5.)  He did not challenge the validity of the convictions for the substantive Hobbs Act robberies or their status as predicate offenses for his § 924(c) convictions on Counts Four and Six.

Second, even if he had raised a challenge to his substantive convictions, the Eleventh Circuit specifically limited its ruling in <u>Eason</u> to the definition of a crime of violence as used in the Sentencing Guidelines:

> Section 924(c)'s elements clause is broader than U.S.S.G. § 4B1.2(a)(1) because it reaches the use, attempted use, or threatened use of force against property. <u>Compare</u> 18 U.S.C. § 924(c), <u>with</u> U.S.S.G. § 4B1.2(a)(1).  "There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of ... § 924(c)(3)(A), which includes force against a person *or* property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person."

<u>Eason</u>, 953 F.3d at 1191.  Petitioner was not sentenced as a career offender under the Guidelines.  <u>See</u> PSI ¶¶ 18-45.  As explained in detail in <u>Eason</u>, the language of the Guidelines and § 924(c) are different, resulting in different conclusions about what qualifies as a crime of violence under each provision.

Finally, on direct appeal, Petitioner raised, and the Eleventh Circuit found no merit to, a claim that Hobbs Act robberies do not qualify as "crimes of violence" under § 924(c) to support the mandatory consecutive sentences imposed for Counts Four and Six. (See doc. no. 14-2; doc. no. 14-5, Mouzon, No. 17-14108.)  A claim raised and rejected on direct appeal cannot be re-litigated in a § 2255 motion.  Stoufflet, 757 F.3d at 1239.  Thus, even if the new claim four were not untimely, it should not be allowed as an amendment because there is no merit to the claim.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.

### (d)  New Claim Five:  Rehaif v. United States Invalidates Felon In Possession Conviction

In new claim five, Petitioner asserts his felon in possession conviction on Count Seven should be vacated in light of Rehaif, 139 S. Ct. 2191 (U.S. 2019), and United States v. Gary, 954 F.3d 194 (4th Cir. 2020).  Because Gary is a non-binding, out-of-circuit case, the Court turns its attention to Rehaif.  In Rehaif, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200.  Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." United States v. Rehaif, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.  For multiple reasons, Petitioner's proposed Rehaif claim is without merit.

First, the Eleventh Circuit Court of Appeals has determined the Supreme Court's Rehaif decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law. In re Palacios,

931 F.3d 1314, 1315 (11th Cir. 2019). The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal. Id. Therefore, Rehaif affords Petitioner no relief in this § 2255 proceeding.

Second, the claim is procedurally defaulted. Applying the procedural default rules explained in detail in Part II(B)(1), the Court concludes Petitioner could have, but did not, raise a mens rea claim. See United States v. Sanders, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 Rehaif claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception). Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument. As explained in Part II(B)(2), "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." Prost, 636 F.3d at 592 n.11. As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused. See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had the government been required to prove the mens rea element at trial. See McQuiggin, 569 U.S. at 386. This is particularly true in light of Petitioner's criminal history, which included multiple convictions resulting in terms of imprisonment exceeding one year in prison. See PSI ¶¶ 52, 53, 56, 58-65. Petitioner's objections to the PSI were based primarily on his "declaration of innocence" and the harshness of the sentence based on the two § 924(c) convictions. Sent. Tr. 3; CR 116-048, doc. no. 98; PSI Add. Petitioner did not dispute he had accumulated the extensive criminal history outlined in the PSI. "It is the law of this circuit that a failure to object to

allegations of fact in a PSI admits those facts for sentencing purposes.  United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon.  "[W]here the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights."  United States v. McClellan, 958 F.3d 1110, 1119 (11th Cir. 2020) (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also United States v. Ward, 796 F. App'x 591, 600-01 (11th Cir. 2019) (per curiam) (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm).  Stated otherwise, a bare Rehaif claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim.  See In re Wright, 942 F.3d 1063, 1065 (11th Cir. 2019); Reed, 941 F.3d at 1021-22.

Third, any Rehaif error was harmless.  It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).  On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious effect or influence" on the outcome of the underlying proceedings.  Al-Amin v. Warden Ga. Dep't of Corr., 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), cert. denied sub nom. Al-Amin v. Ward, 140 S. Ct. 2640, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020).  The Eleventh Circuit has explained that when applying the appropriate harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done,

the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." Ross v. United States, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms forming the basis of his § 922(g) conviction. As discussed, *supra*, Petitioner had accrued multiple felony convictions resulting in exposure to multiple prison sentences in excess of one year. See PSI ¶¶ 52, 53, 56, 58-65. Petitioner did not object to the criminal history in the PSI. Additionally, the parties stipulated at trial Petitioner had a prior felony conviction. CR 116-048, doc. no. 77, Ex. 1; doc. no 79, Gov-1; doc. no. 113, p. 3; Trial Tr. 66, 95.

That Petitioner had multiple prior felony convictions he knew were punishable by imprisonment for more than one year shows he knew his status as a felon prior to his federal offense date. See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence shows knowledge of status as a felon); United States v. Gilcrest, 792 F. App'x 734, 736 (11th Cir. 2019) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown any Rehaif error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice,"

and he is not entitled to relief.  See Brecht, 507 U.S. at 634 & n.8.  Thus, the new claim five should not be allowed as an amendment because it affords Petitioner no relief.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motions to amend and supplement be **DENIED**, (doc. nos. 19, 23, 26, 29), the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of September, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA